UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES LIVINGSTON,

          Plaintiff,

v.                                                     Case No. 5:06-cv-252-Oc-10GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,[1]

          Defendant.
_____/

## **REPORT AND RECOMMENDATION**[2]

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 8) and both parties have filed briefs outlining their respective positions. (Docs. 13 & 14.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED.**

## **I. PROCEDURAL HISTORY**

On June 10, 2002, Plaintiff filed an application for a period of disability and disability insurance benefits claiming a disability onset date of September 6, 2001. (R. 46-58.) Plaintiff's application was denied initially (R. 33-34), and upon reconsideration.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

(R. 29-30.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted Plaintiff's administrative hearing on September 1, 2004 (R. 248-272) and issued a decision unfavorable to Plaintiff on June 15, 2005. (R. 13-21.) The Appeals Council denied Plaintiff's request for review on May 25, 2006. (R. 4-6.) On July 19, 2006, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[4]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[5] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[6] However, the

---

[3] See 42 U.S.C. § 405(g).

[4] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[5] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[6] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from (continued...)

district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[7]  The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[8]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[9]

The ALJ must follow five steps in evaluating a claim of disability.[10]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[11] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[12] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

---

[6](...continued)
evidence on which the Commissioner relied).

[7] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[8] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[9] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[10] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[11] 20 C.F.R. § 404.1520(b).

[12] 20 C.F.R. § 404.1520(c).

disabled.[13] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[14] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[15]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[16] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[17] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[18]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[13] 20 C.F.R. § 404.1520(d).

[14] 20 C.F.R. § 404.1520(e).

[15] 20 C.F.R. § 404.1520(f).

[16] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[17] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[18] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

exertion.[19] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[20]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[21] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[22] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[23]

### III. **SUMMARY OF THE EVIDENCE**

Plaintiff was born on December 31, 1957 and was forty-seven (47) years old at the time of the decision. (R. 252.) Plaintiff completed high school (R. 252) and has past relevant work history as an auto parts salesperson, auto service manager, and sales route driver. (R. 51, 56, 68, 254-255, 259-261, 270.)  Plaintiff contends that he became disabled on September 6, 2001 due to psychological problems. (R. 50.)

---

[19] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[20] Walker at 1003.

[21] Wolfe at 1077-78.

[22] See id.

[23] See Doughty at 1278 n.2.

Based upon the evidence submitted and the testimony presented at the hearing, the ALJ determined that Plaintiff suffers from generalized anxiety disorder, major depression and undifferentiated somatoform disorder. (R. 21.) The ALJ determined that Plaintiff's medically determinable impairments do not prevent him from performing his past relevant work and, therefore, the Plaintiff was not disabled. (R. 21.)

The medical record establishes that Plaintiff's complaints are psychological in nature. On October 16, 2001, Plaintiff was evaluated by Margarite B. Diaz, M.D., who prepared a Psychiatric Evaluation Report. (163-168.) Dr. Diaz noted that Plaintiff's attention and concentration skills were severely impaired and she assigned a Global Assessment of Current Functioning (GAF) Score of 51, indicating moderate difficulty in current functioning. Dr. Diaz found that Plaintiff's personality "appears to be best characterized as passive, dependent, obsessive and depressive." Plaintiff's judgment with regard to decisions affecting his own well-being is "fair," and there are no indications that Plaintiff is not competent to manage his own affairs. Plaintiff had the presence of "moderate anxiety" according to his score on the Hamilton Anxiety Index and the presence of "extreme depression" on his Zung Depression Index score.

The record contains a consultative report by David M. Bortnick, Ph.D., Psy.D, dated October 15, 2002. In the consultative exam, Dr. Bortnick found that Plaintiff was friendly, cooperative, alert and oriented. Dr. Bortnick found no signs of anxiety, depression, pain, hallucinations or delusions. Plaintiff was able to walk, sit and stand without difficulty, despite low back and neck pain from an industrial injury that occurred approximately 10 years prior to the examination. Plaintiff was noted to be able to pay

attention and concentrate on task. Plaintiff expressed a desire to Dr. Bortnick to return to work or go to school. (R. 189-190.)

Dr. Bortnick administered a Personality Assessment Inventory. However, due to the inconsistent responses on the test, Dr. Bortnick was unable to provide a diagnostic impression other than to note "a history of anxiety, depression, probable Somatization-disorder, and possible schizoaffective disorder." Dr. Bortnick noted that Plaintiff was "ambivalent" about working and "may be pursuing a disability-agenda." (R. 189-190.)

Myron Bilak, Ph.D., Plaintiff's treating psychologist, submitted correspondence regarding Plaintiff's need for disability benefits. In the first letter, dated April 18, 2004, Dr. Bilak stated, "it is my clinical opinion that his ongoing symptoms of Generalized Anxiety Disorder continue to make it difficult for him to maintain full time work in a normal job setting." In addition, Dr. Bilak stated that Plaintiff is in need of "job coaching." (R. 209.)

In subsequent correspondence, dated August 26, 2004, Dr. Bilak stated that Plaintiff has "a major anxiety disorder" and is "in dire need of obtaining benefits so that he can have access to the medical care that he needs." Dr. Bilak concluded that Plaintiff's thinking "will interfere with his work to the point that he will 'freeze up' very much like he did when he was hospitalized in Charter Springs Hospital in April of 1996." (R. 234-235.)

Dr. Bilak submitted a Medical Assessment of Ability to do Work-Related Activities (Mental) form that was completed on September 9, 2004. (R. 237-239.) In the assessment, Dr. Bilak found that Plaintiff has a fair ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors and maintain

attention/concentration. Plaintiff was rated by Dr. Bilak as having a poor ability to use judgment, deal with work stress or function independently. While Dr. Bilak found that Plaintiff had poor ability to carry out complex job instructions, Dr. Bilak found that Plaintiff had a good ability to understand, remember and carry out simple job instructions and a fair ability to understand, remember and carry-out detailed job instructions. Dr. Bilak further found that Plaintiff's ability to maintain personal appearance is good and he can manage his own benefits in his best interest.

Plaintiff was referred by the Division of Disability Determination to psychologist, Linda S. Bojarski, Psy.D., who evaluated Plaintiff on November 17, 2004. (R. 240-243.) Dr. Bojarski found that Plaintiff was oriented in all three spheres. His score on the WMS-III suggested borderline immediate memory functioning. Plaintiff's omission of three letters of the alphabet suggests mild deficits in concentration. Plaintiff was 75% accurate in his responses to questions assessing judgment and common sense reasoning skills. Plaintiff scored at the high school level on the Reading Recognition section of the WRAT-3. Plaintiff scored at the Low Average to Borderline range on all memory skills tests. Dr. Bojarski found that the MMPI-2 administered to Plaintiff suggested the possibility of malingering, the exaggeration of symptoms as a plea for help, or a person with clearly psychotic symptoms and behaviors. As such, Dr. Bojarski noted that the profile should be "interpreted with caution" and that "a thought disorder cannot be ruled out." Dr. Bojarski's diagnostic impressions were: Generalized Anxiety Disorder; Undifferentiated Somatoform Disorder; Major Depressive Disorder, Single Episode, Moderate.

Dr. Bojarksi also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) form on November 17, 2004. Dr. Bojarski found that Plaintiff has no limitations in understanding, remembering, or carrying-out short, simple instructions, a slight impairment in the ability to make simple work-related decisions, and moderate impairments in understanding and carrying out detailed instructions. (R. 244-246.) Dr. Bojarski further found that Plaintiff has moderate limitations in interacting appropriately with the public and co-workers and in responding appropriately to work pressures in a usual work setting. According to Dr. Bojarski, Plaintiff has only slight impairments in interacting appropriately with a supervisor and in responding appropriately to change in a routine work setting.

## IV. **DISCUSSION**

Plaintiff argues that the ALJ erred at Step 4 of the sequential evaluation by rejecting the opinion of Plaintiff's treating physician, Dr. Bilak, and finding that Plaintiff has the RFC to perform his past relevant work.[24]

As support for rejecting Dr. Bilak's opinion, the ALJ noted two major inconsistencies between Dr. Bilak's opinion and the weight of the medical evidence. The first major inconsistency is the discrepancy between Plaintiff's allegations of being unable to work while simultaneously demonstrating the desire or ability to work. In a letter dated April 18, 2004, Dr. Bilak stated that Plaintiff is unable to maintain full-time employment, but then in the same letter, Dr. Bilak recommended "some supportive counseling such as job coaching." The ALJ found that this letter "implies the ability to

---

[24] Doc. 13.

return to work at some degree." In addition, Plaintiff also expressed a desire to work or learn computer programming during his visit with Dr. Bortnick on October 15, 2002.[25] Consequently, Dr. Bortnick noted that Plaintiff "may be pursuing a disability agenda."[26]

Furthermore, Plaintiff admitted to Dr. Bojarski and admitted at his hearing in November, 2004, that he had been working part-time, five days a week from 9:45 a.m. until 2:00 p.m., since April 2004 delivering meals to seniors. Thus, Plaintiff's own self reported work activity contradicts Dr. Bilak's opinion that Plaintiff could not sustain work or interact with the public, supervisors, or co-workers. Work done during a period of claimed disability, even if the work was not substantial gainful activity, may show that a claimant is able to do more work than actually performed.[27]

The second inconsistency noted by the ALJ involves the sharp contrast between the opinion of Dr. Bilak and the opinions of several other medical providers of record. Dr. Bilak opined that Plaintiff's anxiety paralyzes him around other people and that he cannot speak spontaneously or follow a conversation. Additionally, Dr. Bilak opined that Plaintiff has no ability to function independently.[28]

However, in contrast to Dr. Bilak's opinion, Plaintiff reported to Dr. Bojarski that he "gets along with people fine," although he "does not engage in interpersonal relationships."[29] Plaintiff also stated to Dr. Bojarski that he had two friends and had

---

[25] R. 190.

[26] Id.

[27] 20 C.F.R. 404.1571.

[28] R. 237-239.

[29] R. 241.

visitors to his home once in a while, and completed all activities of living independently, including shopping, cooking, laundry, housework, and yard work.[30] After evaluating the Plaintiff, Dr. Bojarksi found that Plaintiff had no limitations in understanding, remembering and carrying out short, simple instructions, only a slight limitation in making simple, work-related decisions, and moderate limitations in carrying out, remembering or understanding detailed instructions.

Dr. Bojarski's opinions are consistent with those of the state agency physicians, Drs. Zelenka and Vergara - whose opinions all disclose that Plaintiff is "without marked mental deficits"[31] - and are consistent with the evaluation by Dr. Bortnick.

Dr. Zelenka completed a Mental Residual Functional Capacity Assessment in October 2002 and found that Plaintiff is not significantly limited in understanding, remembering, or carrying-out simple or detailed instructions, and that Plaintiff can perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. Dr. Zelenka also found that Plaintiff can sustain an ordinary work routine without special supervision and has the ability to make simple work-related decisions.[32] Dr. Zelenka found that Plaintiff retains the mental ability to carry out instructions appropriately and relate adequately to others in a routine work setting.[33]

Dr. Bortnick's findings were consistent with Dr. Zelenka in that Dr. Bortnick noted Plaintiff was able to pay attention and concentrate on task. After evaluating the Plaintiff,

---

[30] Id.

[31] R. 20.

[32] R. 169-170.

[33] R. 171.

Dr. Bortnick found that Plaintiff was friendly, cooperative, alert and oriented. Dr. Bortnick did not find any signs of anxiety, depression, pain, hallucinations or delusions. Notably, during the evaluation by Dr. Bortnick, Plaintiff expressed a desire to return to work or go to school.[34]

Dr. Vergara's findings were also consistent with those of Drs. Zelenka and Bortnick.[35] Dr. Vergara completed a Psychiatric Review Technique form on April 1, 2003 and found that Plaintiff had mild restrictions on activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence or pace.

Finally, the ALJ noted that although Plaintiff had been prescribed medication in the past, Plaintiff admitted during his testimony in September 2004 that he was not taking any medication.[36] Plaintiff testified that he had the means to get the medication through the health department, but that he had not made the phone call to sign up for the program and that when he "finally got ... back to look around the paperwork," he had missed the filing deadline for an additional program, through which he could have received his medication.[37]

In sum, based upon the substantial inconsistency between the weight of the medical evidence and Dr. Bilak's opinion, the ALJ did not err by according little weight to the opinion of Dr. Bilak in making his RFC assessment of Plaintiff's ability to engage in work related activities.  Where, as here, an ALJ has made a clearly articulated finding

---

[34] R. 189-190.

[35] R. 195-208.

[36] R. 263.

[37] Id.

based upon substantial supporting evidence in the record, a reviewing court should not disturb the findings by the ALJ.

Accordingly, the Court concludes that the ALJ's findings and his conclusion that the Plaintiff was not disabled because he could perform his past relevant work was based upon substantial evidence.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED.**

**IN CHAMBERS** in Ocala, Florida, on August 6, 2007.

_____
GARY R. JONES
United States Magistrate Judge

Copies to:

    The Honorable Wm. Terrell Hodges
    Senior United States District Judge

    Counsel of Record